UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No.: 3:24-CR-122-TAV-JEM |
| NEHEMIAN UZIEL GONZALEZ, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Jill E. McCook on June 6, 2025 [Doc. 43]. The R&R addresses defendant's Motion to Suppress [Doc. 29], to which the government responded [Doc. 36]. On April 8, 2025, Judge McCook held a motion hearing [Doc. 37]. Judge McCook then issued the R&R [Doc. 43], recommending that the Court deny defendant's Motion to Suppress [Doc. 29]. After receiving an extension [*see* Doc. 45], defendant timely filed objections to the R&R [Doc. 46], and the government responded [Doc. 47]. Thus, the matter is now ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons below, the Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 43] in whole and **DENIES** defendant's Motion to Suppress [Doc. 29]

### I. Background

The Court presumes familiarity with the summary of the evidence and findings of fact as set forth in the R&R [*See* Doc. 43, pp. 2–16]. Neither party explicitly objected to either of these portions of the R&R, but as discussed *infra*, defendant contests the

credibility determinations of Judge McCook as it relates to the issue of probable cause, which bear on the findings of fact in this case. Nonetheless, given the Court's ruling on this credibility matter *infra*, the Court reincorporates the R&R findings of fact below:

> On the evening of October 28, 2024, KPD Officer Christopher McCurry was on patrol in the Lonsdale area of Knoxville, Tennessee. Officer McCurry observed a black Dodge Charger turn right onto Texas Avenue from Sherman Street without coming to a complete stop at the red light. Officer McCurry followed the Charger but did not turn on his lights or siren. Another vehicle was between Officer McCurry's patrol car and the Charger. Officer McCurry continued to follow the Charger, which proceeded onto I-275 and then I-75 before exiting onto Merchants Drive. Officer McCurry accelerated to ninety miles per hour to catch up to the Charger.
>
> Officer McCurry manually activated his dash camera as he pulled behind the Charger on the exit ramp and followed it onto Merchants Drive. At this point, he observed that the Charger's license plate was not properly illuminated. Officer McCurry activated his emergency lights after he and the Charger pulled into the left turn lane on Merchants Drive at the intersection of Central Avenue Pike. The Charger turned left at the light and then immediately turned right into a Delta Express gas station. The Charger, still followed by Officer McCurry with his lights flashing, drove through the gas station parking lot and stopped at the exit from the gas station's parking lot onto Central Avenue Pike but did not turn off its engine. Officer McCurry ordered the driver to place his hands out of the window and to turn off the engine. The driver complied.
>
> Officer McCurry approached the Charger and as he got to the rear wheel on the driver's side, two males wearing hoodies and backpacks got out of the vehicle on the passenger's side and ran away from the Charger. Officer McCurry pursued the individual in a green hoodie, later identified as Defendant's brother, across Central Avenue Pike. Officer Barnes, who was on patrol and located in a parking lot next to the gas station, ran after the individual wearing a black hoodie and carrying a brown backpack who was later identified as Defendant Gonzalez. After Officer McCurry left the gas station, a third passenger got out of the Charger's backseat on the driver's side and walked away.
>
> KPD Officer Jeffrey Torres, who was also on patrol in the Merchants Drive area, saw Officer McCurry conducting the stop at the Delta Express. When he saw the passengers flee, he activated his emergency lights and siren, drove

2

in the direction that Officer Barnes was pursuing Defendant, and stopped at the Red Roof Inn, where he joined Officer Barnes in the foot chase. Officer Torres saw Defendant running with his hand in his waistband and yelled for him to remove his hand, but Defendant did not comply. Officer Torres chased Defendant through the Red Roof Inn complex and parking lot and into an overgrown area by a retaining wall behind some businesses. As Defendant ran through the overgrown area, he removed his hand from his waistband and continued running with both arms at his sides.

Officer Torres chased Defendant to the Quality Inn parking lot, where Defendant ducked behind a hedge by vehicles. When Defendant reappeared, Officer Torres saw that Defendant was no longer wearing the brown backpack. Defendant ran into the Quality Inn. Officer Torres returned to the hedge and checked between vehicles. He found Defendant's brown backpack on the ground between two vehicles. Officer Torres smelled the odor of marijuana coming from the backpack.

Officers searched the brown backpack and seized drugs including marijuana, ammunition, and identification documents for Defendant. Officer Torres returned to the overgrown area by the retaining wall and searched through the kudzu. He did not locate anything on his first search. After retracing his steps from his patrol car back to the overgrown area and searching for nearly six minutes, Officer Torres found a handgun with an extended magazine and a switch to convert it to fire automatically. Law enforcement seized the gun.

Xylon Smith, the Uber driver in the Charger, was subsequently questioned by police and released from the scene without a citation. He told the interviewing officer that his passengers encouraged him not to stop on Merchants Drive when Officer McCurry first activated his lights.

[*Id.* at 14–16].

In his motion to suppress, defendant argues foremost that, as a passenger of the vehicle, he can challenge the traffic stop at issue because he was seized by Officer McCurry [Doc. 29, pp. 2–3]. Given this, defendant asserts that Officer McCurry lacked probable cause to stop the vehicle for a traffic violation, and therefore, all evidence seized, including the firearm and contents of his backpack, should be suppressed as fruits of the poisonous tree [*Id.* at 3]. In the alternative, defendant argues that, even if the traffic stop was valid,

3

the warrantless search of his backpack was unreasonable because he had a legitimate expectation of privacy in the backpack [*Id.* at 3–5]. The government, in turn, contends that defendant was not seized when the vehicle was stopped because he did not submit to the stop and because defendant remained in the vehicle for "mere seconds" before he fled [Doc. 41, pp. 62–63, 69]. And even if defendant was seized, the government argues that the seizure was terminated by defendant when he fled [*Id.* at 70; *see also* Doc. 36, p. 4]. If defendant does have standing to challenge the traffic stop, the government maintains that the stop of the vehicle was supported by probable cause [Doc. 36, pp. 3–4]. As to the search of defendant's backpack, the government asserts that defendant did not have a reasonable expectation of privacy in the backpack because he abandoned it, and alternatively, the officers had probable cause to search the backpack based on the smell of marijuana [*Id.* at 4–6].

Upon consideration of the record and the parties' arguments, Judge McCook has recommended that defendant's Motion to Suppress [Doc. 29] be denied. First, Judge McCook determined that defendant cannot challenge the stop of the vehicle because his "momentary pause" inside the vehicle was not a submission to Officer McCurry's authority and therefore, was not a seizure [Doc. 43, pp. 17–21]. Next, even if defendant could challenge the stop, Judge McCook concluded that Officer McCurry had probable cause to stop the vehicle [*Id.* at 21–24]. Turning to the search of defendant's backpack, Judge McCook found that defendant lost any expectation privacy he may have had in the backpack when he abandoned it, and therefore, the search of defendant's backpack did not contravene the Fourth Amendment [*Id.* at 24–26].

4

## II. Standard of Review

The Court reviews *de novo* those portions of the R&R to which a defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers defendant's motion to suppress, the government's response, the suppression hearing transcript, the R&R, defendant's objections, and the government's response to those objections, all in light of the applicable law.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute"). Each objection to a magistrate judge's recommendation should describe how the analysis is wrong, why it was wrong, and how *de novo* review warrants a different result on a particular issue. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A general objection that merely restates an argument previously presented or simply voices a disagreement with a magistrate judge's suggested resolution "has the same effect[] as would a failure to object." *Austin v. Comm'r of Soc. Sec.*, No. 1:19-cv-2380, 2021 WL 1540389, at *4 (N.D. Ohio, Apr. 19, 2021) (citation omitted); *see also United States v. Dawson*, No. 4:19-cr-206, 2020 WL 109137, at *1 (N.D. Ohio, Jan. 9, 2020) (citations omitted) ("[T]he Court is under no obligation to review *de novo* objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs.").

### III. Analysis

Defendant makes three overall objections to the R&R. First, defendant objects to the R&R's finding that he lacked standing to challenge the traffic stop [Doc. 46, pp. 3–5]. Second, defendant objects to the R&R's finding that Officer McCurry had probable cause to make the stop, making contentions about the credibility of Officer McCurry's testimony [*Id.* at 5–7]. Lastly, defendant objects to the R&R's finding that because he left his backpack in the hotel parking lot, he abandoned any expectation of privacy [*Id.* at 7].

In response, the government states that the R&R is well-reasoned and should be adopted by this Court [Doc. 47, p. 1]. Further, the government argues that defendant's objections "do not accurately reflect the facts presented at the evidentiary hearing[,]" and defendant's assertions are "unsupported by fact of law" [*Id.*].

### A. Standing

As previously stated, defendant first objects to the R&R's conclusion that he lacks standing to challenge the traffic stop at issue [Doc. 46, p. 3]. Primarily, defendant takes issue with the R&R's reliance on *United States v. Jeter*, 721 F.3d 746 (6th Cir. 2013), which the Court recites here:

> The Sixth Circuit declined to find a seizure under circumstances like this case. In *United States v. Jeter*, 721 F.3d 746 (6th Cir. 2013), officers responding to a group of people loitering in a parking lot positioned their patrol car to block the defendant's path, then exited the patrol car to talk with the defendant. *Id.* at 750. The defendant who was on a bicycle "paused briefly" when approached by officers but then tossed his bicycle aside and fled on foot. *Id.* at 752. The court held that "Jeter's momentary pause can hardly be considered a submission to authority, especially where he did not attempt to converse with the officers [but, instead,] intentionally ignored the officers and their requests." *Id.* at 752–53[.] . . . Our appellate court determined that "Jeter did not submit to authority as required by *Hodari D.*

6

> and, thus, the officers' lack of reasonable suspicion to stop him did not violate the Fourth Amendment. *Jeter*, 721 F.3d at 753 ("Where there is no seizure, there can be no Fourth Amendment violation." (citations omitted)).
>
> Applying *Jeter* to this case, Defendant Gonzalez cannot challenge the stop of the Charger because his "momentary pause" inside the vehicle was not a submission to Officer McCurry's authority and, thus, was not a seizure.

[Doc. 43, pp. 20–21 (internal footnote omitted)].

Defendant submits that *Jeter* is distinguishable from the case at hand because here, "Officer McCurry created an environment where he not only showed the requisite authority[,]" but "his actions created the situation where Gonzalez felt provoked to flee" [Doc. 46, p. 3]. Specifically, defendant alleges that Officer McCurry's conduct during the traffic stop was aggressive, pointing to portions of the officer's testimony [*Id.* at 3–4 (citing Doc. 41, pp. 22–24)]. This aggressive conduct, defendant asserts, in combination with the presence of multiple officers at the scene, "created an environment where [defendant] felt compelled to flee" [*Id.* at 4]. And, defendant submits, the Sixth Circuit stated in *Jeter* that "if police officers put a defendant in a reasonable fear of physical harm, the defendant may still have standing" [*Id.* (citation omitted)].

Defendant's argument that his flight from the vehicle was provoked because he was put in reasonable fear of physical harm is a new argument that was not presented to Judge McCook. "[A]bsent compelling reasons," parties may not "raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citing *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998)); *accord United States v. Burney*, No. 2:23-CR-79-1, 2024 WL 987877, at *3 (E.D. Tenn. Mar. 7, 2024), *aff'd*, No. 24-5613, 2025 WL 1896442 (6th Cir. July 9,

7

2025).  Therefore, defendant's objection here is waived.  *Burney*, 2024 WL 987877, at *3 (citation omitted).

Even if the objection were not waived, it is without merit.  Foremost, in *Jeter*, the Sixth Circuit addressed provoked flight in the context of the defendant's seizure *after* the defendant had fled from law enforcement, not before.  *See* 721 F.3d at 753.  Specifically, the defendant in *Jeter* argued that the officers lacked "sufficient justification to seize him" when the officers tackled him to the ground and arrested him "because they provoked his flight."  *Id.*  Here, on the other hand, defendant is insisting that he has standing to challenge the traffic stop because he was seized *before* he fled. Nevertheless, it cannot be said that defendant here was improperly provoked into fleeing due to a fear of imminent harm.

First, as to Officer McCurry's alleged aggressive conduct, defendant cites to Officer McCurry's testimony that, after the vehicle stopped in the gas station parking lot, he instructed the driver of the vehicle to stick his hands out of the window.  Evaluating the facts of this case, and considering other cases involving the flight of an individual from law enforcement, the Court does not find that an officer commanding to see a driver's hands would cause a reasonable person, particularly in the context of a passenger, to fear imminent harm.  *See United States v. Gladney*, No. 13-20187, 2014 WL 794362, at *4 (W.D. Tenn. Feb. 26, 2014) (finding no seizure where the defendant, after being instructed by an officer to come over to him, bent down to tie his shoe, walked away, and immediately started running when the officer said he was going the wrong way); *cf. Jeter*, 721 F.3d at 753 (discussing *Marshall ex rel. Gossens v. Teske*, 284 F.3d 765, 768–69 (7th Cir. 2002) and finding that the plaintiff there "clearly feared imminent harm and thus was justifiably

8

provoked to flee" because the plaintiff was faced with masked men running at him with guns, noting that the plaintiff ran towards a uniformed police officer for help); *Hux v. Williams*, 751 F. Supp. 3d 885, 895 (E.D. Tenn. 2024) (finding that the plaintiff did not flee unprovoked because the plaintiff "began to run away from [the d]efendant only after [the d]efendant initiated the chase" and ran after the plaintiff, threatening to tase him).

As to defendant's argument regarding the multiple officers at the scene, the Court begins by noting the relative positions of the other officers, Officer Barnes and Officer Torres, when defendant fled the scene. Beginning with Officer Barnes, he, and his vehicle, were located in the Applebee's parking lot adjacent to the gas station at the time of Officer McCurry's traffic stop [Doc. 41, pp. 23–24, 26]. When defendant and another passenger, later identified as defendant's brother, fled, Officer Barnes ran after defendant [*Id.* at 31]. Officer Torres, on the other hand, testified that he was sitting at a light at the intersection of Merchants Drive and Central Avenue Pike when he observed Officer McCurry making a traffic stop [*Id.* at 41–42]. Officer Torres witnessed defendant and his brother flee the vehicle on foot, and upon seeing this, Officer Torres initiated his vehicle lights and took a left onto Central Avenue Pike towards the Red Roof Inn [*Id.* at 31, 42]. Officer Torres did not go to the gas station where the traffic stop took place but drove to the second entrance of the Red Roof Inn before exiting his vehicle to engage in the foot pursuit of defendant [*Id.*]. Given the testimony of the officers, defendant's assertion that "Officer Torres also came to the scene of the traffic stop" is inaccurate. Officer Torres's involvement in the incident began after defendant fled from the vehicle.

9

Regardless, however, of Officer Torres's position in relation to the scene of the traffic stop, the Court does not find that defendant fled due to fear of imminent harm, particularly because defendant's flight suggested it was from law enforcement instead of from a perceived place of danger. *See Jeter*, 721 F.3d at 754 ("While the officers' convergence upon the parking lot with several police cruisers and a helicopter may have been grand in the scope compared to the crime they were investigating, and, as such, intimidating, [the defendant] fled in a manner suggesting an attempt to escape law enforcement."); *United States v. Franklin*, 323 F.3d 1298, 1301–03 (11th Cir. 2003) (concluding that the defendant's flight was not wrongfully provoked after taking into consideration its "headlong" nature and significant duration as well as whether a reasonable person facing the same situation would have similarly been caused to flee).

Specifically, the Court finds the duration and nature of defendant's flight to be significant. *See e.g.*, *Franklin*, 323 F.3d at 1302 (determining the defendant's flight to be significant as he ran behind a building, climbed a fence, sprinted across a parking lot, and began to scale a second fence). To reiterate, defendant exited the vehicle 43 seconds after it had stopped, heading towards the Red Roof Inn [Doc. 43, pp. 14–15, 19; *see* Doc. 36-3]. Defendant ran through the Red Roof Inn complex and parking lot and into an overgrown area by a retaining wall behind several business [Doc. 43, p. 15]. Officer Torres believed defendant had a firearm because defendant was running with his hand in his waistband [Doc. 41, p. 32]. As defendant was running through the overgrown area, however, he removed his hand from his waistband and continued running with both arms at his sides [Doc. 43, p. 15]. Officer Torres later found a handgun in the overgrown area [*Id.* at 16].

10

From the overgrown area, defendant continued to run to the Quality Inn parking lot, where he ducked behind some hedges [*Id.* at 15]. When defendant reappeared, he was no longer wearing his backpack, and he ran into the Quality Inn [*Id.*; *see* Doc. 36-6]. While defendant's flight might have indicated initially that he was just trying to remove himself from a potentially dangerous situation, the length of defendant's flight and his desertion of his backpack during his flight indicate his potential involvement in wrongdoing and defendant's desire to evade law enforcement. Therefore, the Court does not find that the presence of multiple officers at the traffic stop, even in combination with Officer McCurry's allegedly aggressive behavior, put defendant in fear of imminent harm such that his flight can be characterized as "provoked."

Another fact also points to defendant's flight being unprovoked: only defendant and his brother fled the scene. *See Jeter*, 721 F.3d at 754 (stating that another reason why the defendant's provocation argument fails is because "none of the other individuals seized in the parking lot fled from the officers"). The driver of the vehicle and a third passenger, however, did not flee when Officer McCurry approached [Doc. 43, pp. 14–16].

Considering all of the above, defendant's objection to the R&R's finding regarding his lack of standing to challenge the traffic stop is **OVERRULED**.

### B. Probable Cause

Given the Court's affirmation of the R&R's conclusion that defendant lacks standing to challenge the traffic stop in this case, there is no need to address defendant's objection to the R&R's finding that Officer McCurry had probable cause to make the stop.

11

Nonetheless, the Court will note that defendant's objection is predicated on a credibility determination [Doc. 46, pp. 5–7]. Specifically, defendant argues that Officer McCurry, "whose testimony was credited by the Magistrate Judge[,] authored a report full of mistakes and false statements" [*Id.* at 5]. In support of this assertion, defendant notes that Officer McCurry's report first indicated that he was responding to a "weapons violations" at 5300 Central Avenue Pike, and that Officer McCurry did not include two details in his report: (1) that he had a heightened sense of officer safety at the scene of the traffic stop; and (2) that the vehicle was going at a high rate of speed before the traffic stop [*Id.* at 5–6]. Defendant also contends that Officer McCurry's "testimony about the lack of license plate illumination[,] along with the video introduced at the hearing[,] hardly establishes that as being the basis for the stop" [*Id.* at 6]. In total, defendant submits:

> It is apparent from the record that probable cause for the stop is based only on the Dodge Charger not stopping at a stop light at the corner of Texas and Sherman Avenue. We do not have video of that incident[,] and we have conflicting testimony. The testimony of Mr. Smith (Uber driver) is more credible because he has nothing to gain from fabricating a story. McCurry – on the other hand – has everything to lose if the evidence is suppressed and the case disappears.

[*Id.* at 7].

"When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a de novo determination of the issues." *United States v. Johnson*, No. 10-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011) (quoting *United States v. Bermudez*, 228 F.3d 424, 2000 WL 1871676, at *3 (6th Cir. Dec. 11, 2000)). The Court notes that "[i]t has long been the practice of our judicial system to leave credibility determinations to

12

the fact finder best equipped to make those determinations." *United States v. Caldwell*, No. 1:13-CR-128, 2015 WL 179583, at *2 (E.D. Tenn. Jan. 14, 2015) (applying this principle to a magistrate judge's credibility finding from a suppression hearing).

"When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determination, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses [s]he sees and hears." *United States v. Robinson*, No. 1:07-CR-1, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007) (citing *United States v. Ailemen*, 986 F. Supp. 1228, 1231 (N.D. Cal. 1997)). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment." *Id.* (citing *Blizzard v. Quillen*, 579 F. Supp. 1446, 1449 (D. Del. 1984)).

Judge McCook arrived at her conclusion as to probable cause after listening to Officer McCurry's testimony and Xylon Smith's testimony, and she was in the best position to judge their credibility. Furthermore, the Court's review of the record does not reveal a reason to question Judge McCook's assessment, even considering what defendant highlights in his objection. Therefore, the Court sees no reason to disturb her findings and recommendation, and defendant's objection here is **OVERRULED**.

### C. Abandonment

Finally, defendant objects to the R&R's determination that because he left his backpack in the Quality Inn parking lot, he abandoned any expectation of privacy in the backpack [Doc. 46, p. 7]. Specifically, defendant argues that he never claimed that he did

not own the backpack, and "[a] finding of abandonment must be based on some evidence that the defendant intended [to] renounce ownership of the property" [*Id.* (quoting *United States v. Britton*, 335 F. App'x 571, 574 (6th Cir. 2009))].[1]

As articulated by the R&R, "the warrantless search and seizure of abandoned property does not violate the Fourth Amendment" [Doc. 43, p. 25]. *United States v. Caldwell*, No. 99-6031, 2000 WL 1888682, at *7 (6th Cir. Dec. 19, 2000) (unpublished table decision) (citing *Abel v. United States*, 362 U.S. 217, 241 (1960)). "Whether property has been 'abandoned[]' . . . does not depend on where legal title rests, or whether one asserting a Fourth Amendment right has a legally enforceable possessory interest in the property." *United States v. Oswald*, 783 F.2d 663, 666 (6th Cir. 1986) (citation omitted); *accord United States v. Smith*, No. 2:19-CR-5, 2020 WL 6391561, at *2 (E.D. Tenn. Nov. 2, 2020) (quoting *Oswald*, 783 F.3d at 667) ("Abandonment is not a matter of a property interest in an object; a person can abandon their property (and the expectation of privacy that goes with it) while retaining 'a legally enforceable possessory interest in the property.'"). Thus, defendant's assertion that he never disclaimed ownership of the backpack is not the end of the inquiry as to whether defendant relinquished his legitimate expectation of privacy in it. *See United States v. Dillard*, 78 F. App'x 505, 510 (6th Cir. 2003) (stating that since the defendant "neither verbally disclaimed ownership of the briefcase, nor . . . ma[d]e any attempt to protect it from search and seizure[,]" the question of abandonment must be decided based on the defendant's actions and circumstances

---

[1] Defendant also incorporates the case law cited in his motion [*Id.*].

surrounding the alleged abandonment); *cf. United States v. Sanders*, 719 F.2d 882, 886 (6th Cir. 1983) (finding that the defendant had a legitimate expectation of privacy in the relevant suitcase because she "continued to indicate she had an interest in keeping the contents private").

Based on defendant's conduct and the circumstances presented here, the Court finds as the R&R does, that is, defendant abandoned the backpack at issue, and therefore, he relinquished any legitimate expectation of privacy he had in the backpack. *See United States v. Mock*, No. 19-20839, 2020 WL 2300238, at *4 (E.D. Mich. May 8, 2020) ("Caselaw is well-established that discovery of incriminating evidence abandoned while [the d]efendant was in flight, but before capture, is not a thing within the protection of the Fourth Amendment."); *United States v. Foster*, 65 F. App'x 41, 46 (6th Cir. 2003). First, defendant discarded the backpack during his flight from law enforcement. *See United States v. Newland*, No. 2:05-CR-111, 2006 WL 1133322, at *4 (S.D. Ohio Apr. 25, 2006) (citing *United States v. Collis*, 766 F.2d 219, 222 (6th Cir. 1985)) ("The Sixth Circuit has held that a person abandons any expectation of privacy in an item when he discards the item while running from the police."); *United States v. Baker*, No. 1:09-CR-95, 2010 WL 2671059, at *4 (S.D. Ohio July 1, 2010) (finding the defendant's act of tossing his weapon and continuing to flee amounted to abandonment of the weapon); *United States v. Durham*, No. 3:21-CR-12, 2022 WL 1785294, at *4 (W.D. Ky. June 1, 2022) ("Once [the defendant] dropped the firearm—whether inadvertently or purposefully—he lost any expectation of privacy. . . . The Fourth Amendment provides no safe harbor for a fleeing person to assert a privacy interest from afar in a gun laying on the pavement."); *United States v. Flintroy*,

No. 3:21-CR-12, 2021 WL 4047384, at *3–4 (E.D. Ky. Aug. 12, 2021), *report and recommendation adopted*, No. 3:21-CR-12, 2021 WL 4037825 (E.D. Ky. Sept. 3, 2021) (finding backpacks that the defendant tossed over a fence into a space adjoining a public road to be abandoned because the defendant continued to flee after doing so, "relinquish[ing] any reasonable expectation of privacy in the backpacks' content").

Second, defendant discarded the backpack in a public parking lot, which also favors a finding of abandonment. *See Dillard*, 78 F. App'x at 510 ("One of the most crucial facts of an abandonment case is the location of the object in question."); *United States v. Phillips*, 677 F. App'x 294, 296 (6th Cir. 2017) (holding that the defendant "gave up any legitimate expectation of privacy in his handgun when he dropped it in a public street and left it behind for the world to see"); *United States v. Hill*, No. 24-CR-20521, 2025 WL 1684233, at *8 (E.D. Mich. June 16, 2025) (finding the defendant abandoned his backpack in part because he discarded it "on a public street, where he had no expectation of privacy"); *United States v. LaBelle*, No. 07-CR-20608, 2008 WL 1931875, at *5 (E.D. Mich. May 2, 2008), *aff'd*, 390 Fed. Appx. 539 (6th Cir. 2010) (unpublished) (finding that the defendant intended to abandon his shoulder bag after leaving it "on the side of a public highway where anyone may happen upon it"); *cf. United States v. Tapia*, No. 1:19-CR-118, 2022 WL 1487041, at *8–12 (S.D. Ohio May 10, 2022) (finding that the defendant did not abandon the duffel bag at issue, noting that the defendant "did not throw his bag away from him and onto a public access way—he put the bag on the roof of his own residence, entirely out of public view and access").

Accordingly, despite defendant's assertion that he "never claimed that he did not own the backpack" at issue, the Court nonetheless finds that defendant, in discarding the backpack in a public space during his flight with law enforcement, abandoned the backpack and relinquished any legitimate expectation of privacy he may have had in it. In turn, defendant's objection here is **OVERRULED**.

IV. **Conclusion**

For the reasons above, defendant's objections [Doc. 46] are **OVERRULED**. The Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 43] in whole and **DENIES** defendant's motion to suppress [Doc. 29].

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE